UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY TANZA, MICHAEL S. BOSMAN, *et al.*, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> Garda CL Atlantic, Inc., <br><br> Defendant. | Case No. 15-cv-04394 (JMA) (AYS) <br> Case No. 2:17-CV-03185 (JMA)(AYS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT, SERVICE AWARD TO CERTAIN NAMED PLAINTIFFS, AND AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiffs Anthony Tanza, Michael S. Bozman, Gary E. Sobek, Carmela Szymanski, Lana Bongiovi, Jimmy Adkins, Michael Boneta, Dennis Delucie, Albert Velazquez, Barry Dubrow, through his Estate, and William Shannon[1] (the "Named Represented Plaintiffs"), on behalf of themselves all other similarly situated, filed suits, since consolidated, against Defendant Garda CL Atlantic, Inc. ("Garda") for alleged violations Worker Adjustment and Retraining Act ("WARN'), 29 USC § 2101 *et seq.*, and the New York WARN Law ("NY WARN"), N.Y. Labor Law § 860 *et seq.*

On April 16, 2018, after several years of litigation, the parties attended a private mediation

---

[1] Named Plaintiffs Charles Engel and Alexander Cioffi have died. The Court's Jan. 19, 2024 Order dismissed the claims of Engel and Cioffo without prejudice to the rights of their living spouses to receive notice of the settlement, participate the same as any other class members, and to claim their respective settlements shares. (ECF No. 162). Named Plaintiffs Fred Smith, Glenny Adon, and Justin Griffin were proceeding *pro se* and were unresponsive to counsel's efforts to contact them. The Court's Jan. 19 Order dismissed the claims of Smith, Adon, and Griffin without prejudice to their right to receive notice of the settlement, participate the same as any other class members, and to claim their respective settlements. *Id.* Named Plaintiffs Robert T. Giani, Dieter Kern, and James Lettis are proceeding *pro se* and similarly received notice of the settlement.

before Martin F. Scheinman, Esq. At mediation, the represented Plaintiffs reached a settlement with Defendant for up to Four Hundred and Twenty-Five Thousand Dollars ($425,000.00), which, after amendment via an *Addendum to Settlement Agreement and General Release* ("Addendum"), was preliminarily approved by this Court first on January 19, 2024 (ECF No. 162). Subsequently, on August 12, 2025, after consideration of an April 29, 2025, letter to the Court from Defendant (the "Rossi Carve-Out Letter"), the Court amended its approval order (the "Amended Order") (ECF No. 178).

Via the Amended Order, the Court ordered notice of the settlement be sent to all members of the Class as set forth in the Agreement and Addendum. On September 16, 2025, per the Settlement Agreement and Addendum and this Court's Amended Order, the Claims Administrator mailed the Class Notice Packet to all Settlement Class Members. In addition to the eleven Named Representative Plaintiffs, thirty-three other Settlement Class Members joined the settlement. The Settlement Claims Administrator received no objections; one request for exclusion; and two requests for exclusion simultaneously accompanied by Consent to Join and Release Form.

With this motion, the Named Represented Plaintiffs respectfully request this Court take the final step in the settlement approval process. Plaintiff respectfully requests that the Court: (a) grant final approval of the Settlement Agreement and Release, as amended by the Addendum and Defendant's April 29, 2025, letter (ECF Nos. 71, 151, and 176); (b) approve certain Named Plaintiffs' Service Awards in the total amount of $14,000.00; (c) approve Plaintiffs' former and current Class Counsel attorney's fees and costs, as set forth in Plaintiff's *Memorandum of Law in Support of Plaintiffs' Motion for Approval of Counsel Fees* (ECF No. 67) and the exhibits annexed thereto on terms the Court determines to be just and consistent with applicable law; (d) approve settlement administration costs incurred by Rust Consulting of $20,000.00; and (e) dismiss this

2

action with prejudice.

## BACKGROUND

### I. Factual History

On July 28, 2015, an action pursuant to the Worker Adjustment and Retraining Act ("WARN"), 29 U.S.C. §2103 *et seq.*, was brought against Garda on behalf Plaintiffs and all other similarly situated individuals who, as of January 23, 2015, worked at Garda's Central Islip, NY facility ("Tanza I"). Thereafter, on December 29, 2016, the Plaintiffs filed an identical action against Garda under the New York State Worker Adjustment and Retraining Notification Act ("NY WARN"), N.Y. Lab. Law §860 *et seq.*, which was then removed to this Court ("Tanza II"). In Tanza I, Plaintiffs allege that Garda failed to provide 60-days advance notice of the consolidation of the Central Islip and Long Island City Branches, which resulted in the Central Islip Branch closure, required by the WARN Act. In Tanza II, Plaintiffs allege that Garda violated NY WARN by failing to provide 90-days advance notice of the Branch consolidation/closure. On June 26, 2018, the Court ordered Tanza I and Tanza II consolidated. (ECF No. 72).

### II. Efforts of Current and Former Class Counsel

Current and Former Class Counsel expended substantial time and effort on this case, which has been ongoing for more than a decade. Among other things, former class counsel, Frank & Associates, P.C., litigated the consolidated actions through the close of discovery, conducted the private mediation, and represented the Named Representative Plaintiffs until Frank & Associates' principal Neil M. Frank ("Mr. Frank:") submitted his resignation as an attorney during a disciplinary proceeding effective August 21, 2019 and dissolved his law firm.

Thereafter, Scott Michael Mishkin and Kyle Pulis of Scott Michael Miskin, P.C. entered their appearance on behalf of certain named Plaintiffs. Thereafter, Scott Michael Mishkin, P.C.

3

was appointed Class Counsel ("Current Class Counsel"). Current Class Counsel engaged in numerous substantive phone calls with Defendant's counsel, counsel for Mr. Frank, and their clients; prepared numerous written briefings; and spent significant time managing the administration of this settlement for the past six years. As the settlement process drug on, current Class Counsel fielded phone calls from Named Represented Plaintiffs inquiring as to the status of the matter, the procedure for submitting claim documentation, and other inquiries. Additionally, Current Class Counsel will prepare for, and attend, the Fairness Hearing scheduled by this Court.

### III. The Settlement Payment and Plan of Allocation

The parties agreed to resolve this case for up to $425,000 (the "Settlement Payment"). Service Award for certain Named Plaintiffs, approved attorneys' fees and expenses, and administration costs, pending this Court's approval, shall come from this Settlement Payment.

For purposes of this settlement, the "Effective Date" means the first date after all of the following have occurred: (1) the Court has entered a Final Approval Order, and (2) the judgment and the rulings on the Motion for Final Approval Order have become final, meaning the time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired and there have been no such actions sought, or if rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review is sought, thirty (30) days after any and all avenues for such review have been exhausted and there has been no modification of the judgment. The Qualified Settlement Fund ("QSF") will be fully funded within ten (10) days after the Court's Fina Approval Order. Following the Effective Date, the Claims Administrator shall make the following payments from the QSF, once the QSF is funded by Defendant: (i) mailing all Settlement Checks to Qualified Claimants in an amount equal to their Individual Settlement Allocation, (ii) mailing any Service Award to Named Plaintiff, and

4

(iii) mailing or wire-transferring payment to former and current Class Counsel in the amount of Court-approved costs plus attorney's fees.

The Revised Gross Fund is the Settlement Payment minus Class Counsel's attorneys' fees and costs, settlement administration expenses, and certain Named Plaintiffs Service Awards. All settlements paid to a Qualified Claimant shall be paid from the Net Settlement Amount pursuant to the following: The payment received by the Authorized Claimant is determined on a *pro rata* basis determined by earnings by each Authorized Claimant relative to the earnings worked by the entire Class during the calendar year 2014 through January 23, 2015. The payments will be characterized as wages paid to each Authorized Claimant less appropriate taxes and other deductions for which the Claims Administrator will issue an IRS Form W-2.

### IV.     Releases

This is a claims-made settlement agreement, under which all members of the Settlement Class are bound by a class settlement, and thereby release all of their Released Class Claims, *except* that Plaintiff John Rossi does not waive any wage-hour claims under the New York Labor Law, and obtain recoveries if they affirmatively request to do so through use of a Claim Form. The release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs.

### V.     The Settlement Class

The Settlement Class consists of "All individuals who, as of January 23, 2015, were employed by Garda CL Atlantic, LLC at its Central Islip, NY branch," who do not exclude themselves from the settlement.

### VI.     Notice to the Settlement Class

The Settlement Agreement and Addendum provide that within three weeks after the Court

5

issues its Order Granting Preliminary Approval, the Claims Administrator shall mail the Court-approved Notice Packet to the Settlement Class Member using the last known addresses set forth in Defendant's records or found through the National Change of Address database, as applicable. However, the Named Represented Plaintiffs did not need to receive a Notice Packet and were automatically considered Qualified Claimants. The Claims Administrator shall take reasonable steps to obtain the correct addresses of the Class Members for whom the notices are returned by the Post Office as "undeliverable," and shall attempt remailings. On September 16, 2025, the Settlement Administrator mailed Notice Packets to the seventy-five Settlement Class Members.

The claims deadline was November 15, 2025. The parties cooperated to accept belated claims to maximize participation in the settlement. At the time of this motion's filing, there were 33 total claims filed, for a participation rate of 51% when the Named Represented Plaintiffs are included. The time for exclusions and objections passed and there were zero objections. Thus, the Class Members overwhelmingly supported the Settlement.

## ARGUMENT

### I.    THE SETTLEMENT SHOULD BE APPROVED

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc, v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context'') (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Courts examine "the fairness of the settlement, its adequacy, its reasonableness and the best interests of the class members." *Id.* at 537 (*citing Klein v. Robert's Am. Gourmet Food, Inc.*,

6

28 A.D.3d 63. 73 (2nd Dept. 2006); *Rosenfeld v. Bear Steams & Co.*, 237 A.D. 2d 199 (1st Dept. 1997); and *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000)).

The approval of a class action settlement is a matter of discretion for the trial court. *See Maywait v. Parker & Parsley Petroleum Co.*, 67 F. 3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab. Inc.*, 2009 WL 6615729, at * 3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation..." *Id*. (internal quotation marks omitted).

### A. The Proposed Settlement is Fair, Adequate, and Reasonable

To determine if a proposed settlement is fair, adequate, and reasonable, courts consider the following factors: "the likelihood of success, the extent of support from the parties, the judgment of counsel, the presence of bargaining in good faith, and the nature of the issues of law and fact." *In re Colt Indus. Shareholder Litig.*, 155 A.d.2d 154, 160 (1st Dept. 1990) (citations omitted). A court should also "balance the value of that settlement against the present value of the anticipated recovery following a trial on the merits, discounted for the inherent risks of litigation." Fiala at 538 (citations omitted). All of these factors weigh heavily in favor of approving this settlement and are discussed below.

#### 1. Likelihood of Success and the Nature of the Issues of Law and Fact

"Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the court

7

"must only weigh the likelihood of successes by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotations omitted). Even in cases where establishing liability appears to be a near certainty, the courts recognize the inherent risks of submitting any claim to a jury. *See McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) (noting that "there are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change.")

The claims in this action are for alleged untimely notice of employment loss when Garda closed its Central Islip Branch, transferred the impacted employees to its Long Island City Branch, and provided them with 90 days' notice of their termination.

The WARN Act requires employers to provide notice 60 days in advance of covered plant closings and covered mass layoffs. This notice must be provided to either affected workers or their representatives (*e.g.*, a labor union); to the State dislocated worker unit; and to the appropriate unit of local government. 29 U.S.C. §2102(a). In the event of a shutdown, a covered employer, however, only must give notice to impacted employees if an employment site will be shut down and the shutdown will result in an "employment loss" (defined later) for 50 or more employees, exclusive of part-time employees, during any 30-day period. 29 U.S.C. §2101(a)(2). "Part-time" employees are defined as employees who have worked less than 6 months in the last 12 months or employees who work an average of less than 20 hours a week for that employer. *Id*. at §2101(a)(8). These latter groups, however, are entitled to notice. The term "employment loss" means: (1) An employment termination, other than a discharge for cause, voluntary departure, or retirement; (2) a layoff exceeding 6 months; or (3) a reduction in an employee's hours of work of more than 50% in each month of any 6-month period. *Id*. at §2101(a)(6). There is one critical exception to the

8

employment loss definition: an employee who refuses a transfer to a different employment site within reasonable commuting distance does not experience an employment loss. *Id*. at §2101(b). An employee who accepts a transfer outside this distance within 30 days after it is offered or within 30 days after the plant closing or mass layoff, whichever is later, also does not experience an employment loss. *Id.* What is a "reasonable commuting distance" varies based on local conditions. 20 C.F.R. 639.5(b)(3). Determining what a reasonable commuting distance is involves consideration of the following factors: geographic accessibility of the place of work, the quality of the roads, customarily available transportation, and the usual travel time. Id. The starting point for determining whether a commuting distance is reasonable is the employee's home, not the employee's place of work. *Id.*

The NY WARN Act largely mirrors the federal WARN Act, with three material differences. First, it sets a lower trigger threshold for its protections. "Employer" includes all employers that employ more than 50 full time employees, as opposed to 100, NYLL § 860–a(3), and a "plant closing" is defined as the termination of at least 25, as opposed to 50, employees at a single site of employment, NYLL § 860–a(6). Second, its notification requirements are stricter and require employers to give 90 days' notice before plant closings or mass layoffs, as opposed to 60 days. NYLL § 860–b(1). NY WARN Law assumes that where the transfer is to a location in New York City or Long Island, anything more than a 1.5 hour commute on Long Island is not a "reasonable commuting distance." NY Reg. Part 921-4.1(c).

Named Represented Plaintiffs and Defendant have differing legal opinions on whether the Central Islip Branch closure was a triggering event under WARN and NY WARN. Plaintiffs' position in this litigation is that the Central Islip Branch closure was a triggering event notwithstanding the offer to transfer because the Long Island City Branch was not within a

9

"reasonable commuting distance" and, thus, they should have received 90, or at least 60, days of advanced noticed of the Branch closure pursuant to NY WARN and WARN, respectively. On the other hand, Garda contends that Plaintiffs cannot meet their burden to prove that 50 employees suffered an employment loss under the WARN Act because (1) less than 50 Central Islip employees met WARN's definition of "employees" that suffered an "employment loss"; (2) even under NY WARN's lower affected-employee threshold, the employees did not experience an "employment loss" when the Central Islip Branch closed because they were offered a transfer; and (3) Garda provided Plaintiffs 90-days' written notice of their April 23, 2015, termination in accordance with federal and state WARN requirements. At the time the settlement was reached, discovery was closed and the matter was ripe for cross-motions for summary adjudication.

This is precisely the scenario that should settle—where both sides have real risks in furthering the litigation. Should Plaintiffs proceed absent this settlement, there is the real chance of no recovery for any Class Member. Although Plaintiffs believe their claims have merit, they recognize the legal, factual and procedural obstacles to recovery, as Defendant has and will continue to vigorously contest their claims if the action does not settle.

Furthermore, even if a judgment were obtained against Defendant at trial, the relief might be no greater, and indeed might be less than the Settlement Amount. For example, even if you assume, *arguendo*, that WARN or NY WARN applied to the Branch Closure notwithstanding the transfer offer (as Plaintiffs insist you must, but Defendant denies), many members of the Settlement Class are nevertheless entitled to no lost wages because they did not suffer an employment loss (if they, for example, accepted the transfer Garda offered, as 13 Class Members did). Clearly there are substantial risks in establishing both liability and damages for the Class, and resolution would hinge on the determination of complex factual and legal issues.

For these reasons, the proposed settlement amount is a sound settlement for Plaintiff and the Settlement Class. Accordingly, these factors weigh in favor of settlement.

## 2. Extent of Support From the Class

The response to the settlement has been positive. The Settlement Administrator received zero objections[2] and only one request for exclusion, which strongly supports final approval. Although two additional requests for exclusion were received, those were accompanied by claims forms, which indicates confusion as to how to complete the forms as opposed to opposition to the settlement.[3]

Courts routinely approve settlements even with both objections and opt-outs. *See In re Sony SXRD Rear Projection Television Class Action Litigation*, 2008 WL 1956267 (S.D.N.Y. 2008); *see also Charron v. Wiener*, 731 F.3d, 241 (2nd Cir. 2013). For example, the Second Circuit in *Charron* found a settlement to be fair, adequate, and reasonable, even though all five class representatives and a total of 118 class members objected to the settlement, and 141 class members opted out. *Charron* at 254. Similarly, the Court granted final approval in *In re Sony* holding that even though 22 class members opted out and 45 class members objected to the settlement, the overall reaction by the class supported settlement. *Id*. at 6; *see also Casey v. Citibank*, 2014 WL 4120599 (N.D.N.Y. 2014) (even if objector's points are valid, if settlement is fair, reasonable, and adequate, Court cannot impose a different settlement on settling parties.)

---

[2] A purported objection on behalf of Sarah Cioffi, the surviving spouse of deceased former named plaintiff Alexander Cioffi, was filed on the docket prior to the Court's entry of its original and amended orders preliminarily approving the parties' settlement. ECF Nos. 169. However, Ms. Cioffi never submitted any objections in accordance with the procedures provided in the Court's Amended Order or the Notice. Instead, she submitted a consent to join the settlement.

[3] The Settlement Administrator sent cure letters to those class members who completed both a claim form and an exclusion form informing them that they would be presumed to have completed both forms in error and would be presumed to be a settlement class member unless they contacted the Settlement Administrator.

Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *See In re Sony*. The response here evidences overwhelming support of the settlement by the class members. As such, this factor also weighs strongly in favor of settlement.

The Claims Administrator sent notice to the Class in accordance with this Court's Preliminary Approval Order, and to that end, mailed a total of 75. The participation rate is 51%, well within the expected range of settlement participation. *See* Andrew C. Brunsden, HYBRID CLASS ACTIONS, DUAL CERTIFICATION, AND WAGE LAW ENFORCEMENT IN THE FEDERAL COURTS, 29 Berkeley J Emp &Lab L 269, 292-94 (2008) (noting the typical range of claims participation as low as 2%, with a nationwide average of 15%).

The fact that some Class Members chose not to submit a claims form does not speak negatively to the settlement or to the process. Rather, "[t]he fact that the vast majority of class members neither objected to nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008).

### 3. Judgment of Counsel

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores. Inc, v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2nd Cir. 2005) (quoting MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995)). If the settlement was achieved through experienced counsels' arm's length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., 2007 WL 2230177 at * 4 (S.D.N.Y. 2007); *In re Bank America Corp. Sec. Litig*., 210 F.R.D. 694, 700 (E.D.Mo. 2002) ("In

12

evaluating the settlement, the Court should keep in mind the unique ability of the class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." [internal quotations omitted]).

In this case, the settlement was reached only after the parties engaged in substantial discovery, negotiation, and mediation. This process involved substantial give and take between the parties and their counsel regarding damages and a host of other substantive and procedural issues. The parties also engaged a private mediator to help facilitate settlement.

### 4. The Balance of the Value of the Settlement Against the Value of Anticipated Recovery

Consideration of the value of the settlement against the value of anticipated recovery weighs heavily in favor of approval of this settlement. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum. Instead 'there is a range of reasonableness with regard to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citations omitted). When a settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, 5 (S.D.N.Y. 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v*. A.C.L.N. Ltd., 2004 WL 1087261, 5 (S.D.N.Y. 2004)).

First and foremost, the Settlement is an excellent result for the Settlement Class. Up to $425,000 in cash is a very good recovery in a WARN action where there are *bona fide* arguments

13

that neither the employee threshold nor employment loss definitions were met.

Moreover, had this case not settled, obstacles remained. Most significantly, class certification and summary judgment were on the horizon at the time of settlement. Even if Plaintiff succeeded on those motions, the Parties would have had to spend a substantial amount of time on Defendant's potential appeal. Furthermore, even had Plaintiff obtained class certification and won at trial, it is possible that the Settlement Class would have been awarded less damages than they are receiving in this Settlement because even if you assume, *arguendo*, that WARN or NY WARN applied to the Branch Closure notwithstanding the transfer offer (as Plaintiffs insist you must, but Defendant denies), many members of the Settlement Class are nevertheless entitled to no lost wages because they did not suffer an employment loss (if they, for example, accepted the transfer Garda offered, as 13 Class Members did). Weighing the value of the settlement against the value of the anticipated recovery, clearly the settlement amount is more than reasonable and represents an outstanding result for members of the Settlement Class.

### 5. Presence of Bargaining In Good Faith

As discussed a "presumption of fairness arises where a settlement was reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *WalMart Stores, Inc.*, 396 F.3d 96 at 116 (internal quotation omitted). Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, 5 (S.D.N.Y. 2005) (internal quotation omitted).

This settlement is the result of extensive, arm's length negotiations that lasted for several years, as the parties refined the settlement to reflect material events, such as disbarment of counsel, death of class members, and the passage of time. Ultimately, this case was filed in 2015 and has

been actively litigated since that time. "[T]he history and length of the litigation speak to the lack of collusion and coercion in negotiating the final settlement." *Fiala* at 539. Therefore, it is clear that the parties bargained in good faith, and this factor weighs in favor of approving the settlement.

For all of the foregoing reasons, the settlement is fair, adequate, and reasonable, and should be approved.

### B. A Service Payment Should Be Awarded to Plaintiff

Under the proposed Settlement Agreement, and subject to the Court's approval, a service payment of $1,000.00 should be awarded to Named Plaintiffs Anthony Tanza, Michael S. Bosman, Robert T. Giani, Gary E. Sobek, Carmela Symanski, Lana Bongiovi, Jimmy Adkins, Michael Boneta, Dennis Delucie, Albert Velazquez, James Lettis, Alexander Cioffi, Barry Dubrow (through his Estate), and William Shannon.[4]

These Named Plaintiffs assert that they sustained the burden of delay arising from various circumstances since the original Settlement was made and that special circumstances exist to warrant the service award of $1,000 contemplated by the Agreement

It is common for courts to grant service awards in a class action. Such awards "reward the named plaintiffs for the effort and inconvenience of consulting with counsel over the many years [a] case was active and for participating in discovery..." *Cox v. Microsoft Corp.*, 26 Misc.3d 1220(A), 4 (N.Y. Sup. 2007). Here, the service award is modest. This request was included in the Notice sent to the Class Members, is reasonable for the services Plaintiff provided, and is well below the range awarded by courts in other employment-related actions. *See Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, 9 (S.D.N.Y. 2012) (approving service awards of $20,000 and

---

[4] Charles Engel, who is deceased, was eligible for a service award. A notice was mailed to his last known address and was not returned to the settlement administrator as undeliverable. No surviving spouse or other person submitted a claim form on his behalf.

15

$10,000 for class representatives in wage and hour action); *Lovaglio v. W & E Hospitality Inc.*, 2012 WL 2775019, 4 (S.D.N.Y. 2012) (approving service awards of $10,000 each to three class representatives in wage and hour action); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, 13 (S.D.N.Y. 2012) (approving service awards of $15,000 and $10,000 for the class representatives); *Matheson v. T-Bone Restaurant, LLC*, 2011 WL 6268216, 9 (S.D.N.Y. 2011) (approving service awards of $45,000 and $5,000 for the class representatives in a wage and hour class action); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, 7 (E.D.N.Y. 201l) (approving service awards of $30,000, $15,000, and $7,500 in a wage and hour class action.)

Accordingly, Class Counsel respectfully requests that the Court grant $14,000 in service awards of $1,000 each to Named Plaintiffs Anthony Tanza, Michael S. Bosman, Robert T. Giani, Gary E. Sobek, Carmela Symanski, Lana Bongiovi, Jimmy Adkins, Michael Boneta, Dennis Delucie, Albert Velazquez, James Lettis, Alexander Cioffi, Barry Dubrow (through his Estate), and William Shannon . Given Plaintiffs' time and assistance with the case, as well as the significant passage of time since the settlement was reached, this service payment is appropriate and justified as part of the overall settlement.

### C. Class Counsel's Attorneys' Fees and Costs Should Be Approved

The Settlement Agreement provides an award of attorneys' fees in the amount of one-third of the amount of the Settlement Fund, or $141,666.00. New York courts typically use the percentage of the fund in common fund cases like this one. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, *29 (S.D.N.Y. 2012).

Indeed, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the

16

largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, *8 n.2 (S.D.N.Y. 2008); *Velez v. Majik Cleaning Serv., Inc.*, 2007 U.S. Dist. LEXIS 46223, *7 (S.D.N.Y. 2007). The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Luis v. Diskal Inc.*, 2021 NY Slip Op 33108[U], *11 (Sup. Ct., Queens Cty. 2021) (*quoting Asare v. Change Group NY, Inc.*, 2013 US Dist LEXIS 165935, *44 (S.D.N.Y. 2013)); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").

The percentage method also preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare*, 2013 U.S. Dist. LEXIS 165935 (*quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res.*, 209 F.3d 43, 48-49 (2d Cir. 2000).

The hallmark of an award of attorneys' fees is still one of reasonableness. In determining the reasonableness of attorney's fees, a court should consider the following factors:

> [T]he risks of the litigation, whether counsel had the benefit of a prior judgment, standing at bar of counsel for the plaintiffs and defendants, the magnitude and complexity of the litigation, responsibility undertaken, the amounts recovered, the knowledge the court has of the case's history and the work done by counsel prior to trial, and what would be reasonable for counsel to charge a victorious plaintiff.

*Fiala,* 899 N.Y.S.2d at 540.

Here, the only unusual factor is that, after the parties reached a settlement, Neil M. Frank, lead counsel for Plaintiffs and the principal of Frank & Associates, PC, resigned from the New York State Bar in connection with a disciplinary proceeding conducted by the Grievance Committee for the Tenth Judicial District. The parties amended their original Settlement Agreement via an Addendum to address these new circumstances, as well as other matters that needed to be amended or updated due to the passage of time since the original settlement agreement was executed. This included modifying the original settlement agreement to acknowledge that Frank & Associates, P.C. may only receive a fee as allowed by the Court under the permissible ethical rules for disbarred attorneys and that newly-appointed Plaintiffs' Class Counsel should receive a reasonable fee as determined by the Court, with such fee collectively not to exceed the agreed-upon amount allocated to attorney's fees and costs in the original Settlement Agreement of $141,666.00. Because the compensation for a non-practicing attorney must be fixed by the Court, the parties seek approval of an award of attorney's fees and costs made with specific findings regarding any payment to former Class Counsel, consistent with those fees sought by former Class Counsel and Current Class Counsel in Plaintiff's Memorandum of Law in Support of Plaintiffs' Motion for Approval of Counsel Fees. [ECF No. 67].

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court:

(a)     grant final approval of the proposed class action settlement as set forth in the parties' settlement agreement and addendum (ECF Nos. 71, 151), and as modified by Defendant's April 29, 2025, letter (ECF No. 176);

(b)     approve Named Plaintiffs Anthony Tanza, Michael S. Bozman, Robert T. Giani, Gary E. Sobek, Carmela Szymanski, Lana Bongiovi, Jimmy Adkins, Michael Boneta, Dennis

Delucie, Albert Velazquez, James Lettis, Alexander Cioffi, Barry Dubrow (through his Estate), and William Shannon's receipt of Service Awards;

  (d) approve Plaintiffs' former and current Class Counsel attorney's fees and costs, as set forth in Plaintiff's *Memorandum of Law in Support of Plaintiffs' Motion for Approval of Counsel Fees* (ECF No. 67) and the exhibits annexed thereto on terms the Court determines to be just;

  (e) approve the settlement administrator's costs;

  (f) dismiss these actions with prejudice; and

Dated: Islandia, New York
   December 30, 2025

                 **SCOTT MICHAEL MISHKIN, P.C.**

                 /s/ Scott Michael Mishkin
              By: Scott Michael Mishkin
                 One Suffolk Square Suite 240
                 Islandia, New York 11749
                 Telephone: (631) 234-1154
                 Facsimile: (631) 234-5048